UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UTICA COLLEGE,

                  Plaintiff,                  No. 6:08-CV-88-DNH-GJD

      v.

GARY R. GORDON & JUDITH GORDON,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

HAGE & HAGE LLC                  DANIEL A. BURGESS, ESQ.
Attorneys for Plaintiff                 J. K. HAGE III, ESQ.
283 Genesee Street
Utica, New York 13501

OHRENSTEIN & BROWN, LLP      MICHAEL D. BROWN, ESQ.
Attorneys for Defendants           MATTHEW BRYANT, ESQ.
1010 Franklin Avenue
Garden City, New York 11530-9243

FEATHERSTONHAUGH, WILEY &     RANDALL J. EZICK, ESQ.
CLYNE, LLP
Attorneys for Defendants
99 Pine Street, Suite 207
Albany, New York 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       On May 9, 2008, plaintiff Utica College ("plaintiff") and defendants Dr. Gary R. Gordon and Judith Gordon entered into a consent judgment to resolve plaintiff's pending claims for injunctive relief and monetary damages. (See Consent J., Dkt. No. 23.) Plaintiff

now moves pursuant to Federal Rule of Civil Procedure 70 to enforce the consent judgment. In its motion, plaintiff seeks (1) the appointment of a third party to review defendants' records to determine whether they have fully complied with the consent judgment; (2) to hold defendants in contempt; and (3) monetary sanctions against defendants, including an award of damages and attorneys' fees. Defendants oppose plaintiff's motion and cross-move for an order pursuant to 17 U.S.C. § 505 requiring plaintiff to pay their attorneys' fees for unreasonably filing copyright registrations.

Oral argument was heard on October 9, 2009 in Utica, New York. Decision was reserved.

## II. **BACKGROUND**

In 1998, plaintiff established the Economic Crime Institute ("ECI") to provide research in the field of identity theft, commercial crimes, and information security. At that time, Dr. Gordon was appointed ECI's Executive Director. Mrs. Gordon later became the institute's Administrative Assistant in 2001.

In May 2006, plaintiff received a federal grant from the Bureau of Justice Assistance to analyze federal law enforcement data as it related to trends, patterns, and groups perpetrating identity fraud and other economic crimes. As a condition of the grant, the federal government retained a royalty-free, non-exclusive license to reproduce, publish, or authorize others to use any documents or reports created with federal funds. In June 2006, the Center for Identity Management and Information Protection ("CIMIP") was established as a partnership between academic, corporate, and governmental entities aimed towards setting a national research agenda in the field of identity theft. At that time, Dr.

Gordon was appointed CIMIP's Executive Director and Mrs. Gordon became the organization's Program Administrator.

In October 2007, CIMIP published a report on identity fraud trends and patterns (the "Report") which was first presented at an ECI conference later that month. In December 2007, defendants were terminated from their employment and plaintiff assumed control of CIMIP. On January 18, 2008, plaintiff sued defendants for, *inter alia*, replevin, conversion, bailment, and breach of fiduciary duty. At that time, plaintiff sought injunctive relief directing defendants to turn over property used and developed over the course of their employment.

A preliminary injunction was granted on February 25, 2008, ordering defendants to deliver to plaintiff all tangible property, files, and electronic data (the "Items") that were created, produced, received, or maintained by defendants during the course of their employment. (See Order, Dkt. No. 16.) Defendants were also enjoined from "retaining copies of the Items" or "from otherwise transferring, assigning, maintaining, damaging [or] possessing" the Items. (Id.) In accordance with the preliminary injunction, defendants returned to plaintiff two cardboard boxes of documents and three computers. On March 5, 2008, plaintiff registered its copyright to the Report with the United States Copyright Office. (Ex. B to Pl's. Mot., Dkt. No. 25-5.)

The parties settled the lawsuit by entering into a consent judgment on May 9, 2008. (Consent J., Dkt. No. 23.) In addition to the same conditions included in the preliminary injunction, the consent judgment required defendants to pay for the legal costs associated with enforcing the judgment in the event they did not comply with the terms of the settlement. (Id.)

On June 12, 2008, defendant Dr. Gordon gave a presentation on the Report's findings before the United States Department of Homeland Security and SRI International ("DHS-SRI"). Having returned his files related to his role as CIMIP's Executive Director pursuant to the preliminary injunction, defendant Dr. Gordon received a copy of the Report from one of the corporate members of CIMIP in preparation for his presentation to DHS-SRI. (Gordon Aff., Ex. 2 to Defs.' Cross-Motion, Dkt. No. 29-3, ¶ 32.) DHS-SRI posted the Report on its website in advance of the presentation.

On May 21, 2009, plaintiff's attorneys sent a letter to defendants' attorneys voicing their objection to Dr. Gordon's use of the Report. In particular, plaintiff alleged that the Powerpoint presentation used in connection with the DHS-SRI presentation was virtually identical to the Powerpoint presentation used for the ECI conference in October 2007. In response via letter sent June 4, 2009, defendants' attorneys expressed their right to use the intellectual property created in the Report. On June 18, 2009, plaintiff registered its copyright to the Powerpoint presentation used at the ECI conference as a derivative work of the Report. (Ex. I to Pl's. Mot., Dkt. No. 25-8.)

## III. DISCUSSION

### A. Plaintiff's Motion to Enforce the Consent Judgment

In the event a party fails to comply with a judgment, Federal Rule of Civil Procedure 70(a) provides: "[T]he court may order the act to be done–at the disobedient party's expense–by another person appointed by the court." FED. R. CIV. P. 70(a). A disobedient party may also be held in contempt. FED. R. CIV. P. 70(e). In order to find a party in contempt, the moving party must show that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3)

the contemnor has not diligently attempted to comply in a reasonable manner."  Perez v. Danbury Hosp., 347 F.3d 419, 423-24 (2d Cir. 2003) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)).  If found in contempt, monetary sanctions may be awarded to either compensate the moving party for harm resulting from the noncompliance or to deter further disobedience.  Manhattan Indus, Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989) (citations omitted).  Although courts have "wide discretion" to determine a coercive remedy to ensure future compliance, compensatory damages are appropriate only if the plaintiff establishes that it has suffered harm due to the violation.  Vuitton et Fils S. A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979) (citations omitted).

Pursuant to the consent judgment entered on May 9, 2008, defendants were "permanently enjoined from otherwise transferring, assigning, maintaining, damaging, *possessing*, or otherwise doing anything with the Items that is inconsistent with this Order."  (Consent J., Dkt. No. 23, ¶ 2 (emphasis added).)  The "Items," as defined by the consent judgment, consisted of

> all computers and computer equipment provided by Utica College, and all documents, hard drives, electronic communications, electronic data, paper files, e-mails, e-mail addresses, and all other electronic or paper documents and files that were created, produced, received, or maintained by the Gordons, or either of them, in the course of their employment by Utica College in any capacity . . . .

(Id.)  Taking into consideration the wide breadth of prohibited items, including "all other electronic or paper documents and files," and the blanket prohibition against possessing any of these items, the consent judgment clearly and unambiguously prohibited the defendants from receiving the Report produced during Dr. Gordon's tenure as CIMIP's Executive Director.  It necessarily follows that Dr. Gordon's admission that he received a copy of the Report in preparation for his presentation to DHS-SIR, (see Gordon Aff., Ex. 2 to Defs.'

Cross-Motion, Dkt. No. 29-3, ¶ 32,) constitutes clear and convincing evidence of his violation of the consent judgment. In light of the clear prohibition established by the consent judgment and Dr. Gordon's willful violation, plaintiff has shown that Dr. Gordon did not diligently attempt to comply with the order. Therefore, Dr. Gordon will be held in contempt for violating the consent judgment.

Notwithstanding Dr. Gordon's violation, plaintiff does not identify any basis for believing either of the defendants are in possession of additional prohibited items. Plaintiff's counsel conceded at oral argument that he was unaware of any documents or files in defendants' possession other than the Report. Accordingly, it is unnecessary to appoint a third party to review defendants' records to determine whether they have otherwise complied with the consent judgment.

Finally, apart from attorneys' fees, plaintiff's memorandums of law are devoid of any indication of the harm it suffered as a result of Dr. Gordon's violation. Plaintiff's counsel briefly remarked at oral argument that his client had been forced to retain an expert, but he conceded that the expert had neither compiled a report nor submitted any findings on behalf of plaintiff's motion. Similarly, the supporting affidavit of Todd Hutton, Utica College's President, does not allege facts indicating the extent of the resulting damages. The injury incurred, if any, is suspect in light of the undisputed fact that the Report was available in a public domain, funded by federal grant money, and subject to a royalty-free, non-exclusive license retained by the federal government. Therefore, plaintiff will be awarded monetary sanctions in the form of one dollar ($1) for nominal damages and two-thousand-five-hundred dollars ($2,500) to deter further disobedience and account for reasonable attorneys' fees associated with bringing the Rule 70 motion. Judgment will only be entered against Dr.

Gordon, and not Mrs. Gordon, as there are no allegations that she violated the consent judgment.

### B. Defendants' Cross-Motion for Attorneys' Fees

Pursuant to 17 U.S.C. § 505 ("§ 505"), courts have wide discretion to award costs and attorneys' fees to a prevailing party "in any civil action" brought under title 17.  Attorneys' fees may be granted if it is determined that the losing party's civil action brought under title 17 was frivolous or otherwise objectively unreasonable.  See Crescent Publ'g Group, Inc. v. Playboy Enterprises, Inc., 246 F.3d 142, 147 (2d Cir. 2001).

Defendants assert a number of reasons for why it was objectively unreasonable for plaintiff to file its copyright registrations as to the Report and the Powerpoint presentation first presented at the October 2007 ECI conference.  Without deciding the reasonableness of plaintiff's decision to file its copyright registrations, defendants' motion for attorneys' fees pursuant to § 505 must be denied because plaintiff's copyright registration applications were not civil actions brought pursuant to title 17.  Instead, an application for the registration of a copyright is more akin to an administrative proceeding.  See 17 U.S.C. § 701(a) ("All *administrative* functions and duties under this title, except as otherwise specified, are the responsibility of the Register of Copyrights as director of the Copyright Office of the Library of Congress.") (emphasis added).  Additionally, the decision to grant a copyright registration is subject to the Administrative Procedure Act.  17 U.S.C. § 701(e).  Therefore, defendants are not entitled to attorneys' fees because even if plaintiff's applications for copyright registration were objectively unreasonable, the applications did not constitute civil actions brought under title 17.

## IV. **CONCLUSION**

As discussed, Dr. Gordon will be held in contempt due to his willful violation of the consent judgment entered on May 9, 2008. The order clearly prohibited either of the defendants from possessing any of the files created during their employment with plaintiff, including the Report, and Dr. Gordon's admission that he received a copy of the Report in preparation for his presentation to the DHS-SRI constitutes clear and convincing evidence that he violated the terms of the consent judgment. Because it is unable to show any past harm stemming from Dr. Gordon's violation, plaintiff is entitled to nominal damages, and reasonable attorneys' fees as sanctions to deter future disobedience of the consent judgment. The appointment of a third party to review Dr. Gordon's records and ensure his present compliance with the consent judgment is unnecessary in light of plaintiff's inability to present evidence that Dr. Gordon is in possession of other prohibited items apart from the Report.

Accordingly, it is

ORDERED that

(1) Plaintiff's motion is GRANTED in part and DENIED in part;

(2) Defendant Dr. Gary R. Gordon is held in contempt for violating the consent judgment;

(3) Defendant Dr. Gary R. Gordon is sanctioned and ordered to pay plaintiff two-thousand-five-hundred-one dollars ($2,501);

(4) Appointment of a third party to review defendants' compliance with the consent judgment is DENIED;

(5) Defendant Judith Gordon is not held in contempt for violating the consent judgment; and

(6) Defendants' cross motion for attorneys' fees is DENIED.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 16, 2009
       Utica, New York